UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CARRIE L. MITCHELL,            )<br>                                              )<br>       Plaintiff,                        )<br>                                              )<br>v.                                           )<br>                                              )<br>MICHAEL J. ASTRUE,           )<br>Commissioner of Social Security,  )<br>                                              )<br>       Defendant.                      ) | Cause No.: 1:06-CV-239 |

**OPINION AND ORDER**

This matter is before the court[1] for judicial review of a final decision of the defendant Commissioner of Social Security Administration ("the Commissioner") denying plaintiff Carrie L. Mitchell's ("Mitchell") application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act ("the Act"), 42 U.S.C. §§ 416(i) and 423. For the reasons discussed herein, the final decision of the Commissioner is AFFIRMED.

**I. Factual Background**

The factual background in this case is largely undisputed. Mitchell filed concurrent applications for DIB and SSI on December 18, 2002. Certified Transcript of Record of Proceedings, pp. 98-100.[2] Mitchell claimed that she became disabled on December 16, 2002.

---

[1] Jurisdiction of the undersigned United States Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

[2] All references to the certified record submitted in this case appear simply as "Record at p. __." The full record was filed manually with the Clerk of the Court and designated as docket entry number 10.

*Id.*, p. 98.  Prior to her application for benefits, Mitchell worked as a "line packer" in a bakery.  Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 ("Plaintiff's Brief"), Docket at 16, p. 2.  In her application forms, Mitchell "alleged impairments including bilateral degenerative joint disease of her left knee, degenerative joint disease of her left shoulder, status-post left rotator cuff repair, history of cervical degenerative disc disease, status-post cervical discectomy, hypertension, status-post right lobectomy, status-post carpal tunnel release surgery, reactive airway disease with chest tightness, status-post left knee arthroplasty, chronic left knee pain, asthma, back pain, status-post hysterectomy, and obesity."  *Id.*

Mitchell's requests for benefits were denied on consideration and reconsideration.  Record at pp. 90-93 and 491-502.  A hearing was held in this case on October 5, 2004, before Administrative Law Judge Frederick McGrath.  Plaintiff's Brief, p. 1.  At that hearing, Mitchell was represented by counsel and testified on her own behalf.  *Id.*  The Administrative Law Judge ("ALJ") issued an unfavorable decision on March 4, 2005.  Record at pp. 15-27.  The Social Security Appeals Council declined to review the ALJ's decision.  Record at pp. 4-6.  Accordingly, the decision of the ALJ became the final decision of the Commissioner.  Mitchell filed her Complaint with this court on June 22, 2006, seeking judicial review pursuant to 42 U.S.C. § 405(g).  *See* Docket at 1.

Mitchell was 54 years of age at the time of the hearing and had an eleventh grade education.  Record, p. 18.  As stated, she had worked as a line packer in a bakery prior to the onset of her alleged disability.  Mitchell saw several doctors and received various types of medical treatment prior to and after submitting her initial applications to the Social Security Administration.  Mitchell's medical records comprise the majority of the voluminous record

compiled in her case.

Dr. Annette Lane, Mitchell's family physician, examined her in March 2002 for complaints "about pain in her neck," "episodic numbness and tingling in her arm," and "pain . . . across her shoulder." Plaintiff's Brief, pp. 2-3. Dr. Lane prescribed Voltaren, ordered physical therapy, and, ultimately, referred Mitchell to an orthopaedic surgeon. *Id*.

In June 2002, Mitchell consulted with Dr. Michael McArdle, an orthopaedic surgeon. *Id*. Dr. McArdle determined that Mitchell had some flexion difficulties and "a tiny rotator cuff tear." *Id*. Dr. McArdle was reluctant to perform surgery at that time and instead gave Mitchell an injection. *Id*. In a follow-up exam in July 2002, Dr. McArdle "reported a good result from the injection and that [Mitchell] was feeling better." *Id*. In October of 2002, Mitchell saw Dr. McArdle again (after having also consulted with Dr. Lane) and he injected her shoulder yet again. *Id*., p. 4. He also prescribed Bextra and recommended that Mitchell continue an exercise regimen. *Id*. According to Mitchell, Dr. McArdle also took X-rays of her knees, which revealed "some degenerative arthritic changes" and informed her "that in the future she may well need a total knee arthroplasty on the left." *Id*. Also at that time, he prescribed Bextra. *Id*.

Mitchell, however, continued to experience pain and, on December 23, 2002, Dr. McArdle "performed acromioplasty and bursectomy on her left shoulder . . . ." *Id*.; Record at pp. 168-174, 244, 350. Mitchell apparently responded well following the surgery, and Dr. McArdle recommended a continuation of physical therapy and exercise. *Id*., p. 5. On February 12, 2003, Dr. McArdle released Mitchell to return to work in two weeks, assigning a limitation of "no use" of her left arm. Record at p. 235.

On February 14, 2003, Mitchell saw Dr. Michael E. Holton, who performed a disability

3

examination at the request of the Social Security Administration.  *Id*., p. 6.  Mitchell allegedly provided Dr. Holton with a detailed oral health history.  *Id*., p. 6.  Following the exam, Dr. Holton diagnosed Mitchell with "degenerative joint disease of the left knee and left shoulder, history of cervical discectomy, and hypertension."  *Id*., p. 7; Record at p. 181.

On February 24, 2003, the date Mitchell was to return to work, Dr. McArdle changed the restriction he assigned twelve days earlier and kept Mitchell off work, stating that she was "having surgery" for left total knee arthroplasty.  Record at p. 232.

On March 13, 2003, Mitchell saw Dr. T. Crawford, a state agency doctor, who examined Mitchell and provided a Physical Residual Functional Capacity Assessment.  Record at pp. 189-198.  Dr. Crawford "found that [Mitchell] could perform light work with non-exertional limitations including only occasional climbing, balancing, stooping, kneeling, crouching, crawling and avoidance of even moderate exposure to extreme heat."  Plaintiff's Brief, p. 7; Record at pp. 189-198.  Dr. Crawford placed modest limitations on Mitchell's ability to work.  Record at p. 190.  "On October 14, 2003 Dr. J. Gaddy reviewed these findings, and he agreed with them."  Plaintiff's Brief, p. 7; Record at p. 196.

Shortly after her examination by Dr. Crawford, Mitchell saw Dr. McArdle again.  Dr. McArdle determined that Mitchell's shoulder had healed well and that she could proceed with knee replacement surgery.  Dr. McArdle performed the surgery on March 19, 2003.  Plaintiff's Brief, p. 7.  Following the surgery, Dr. McArdle ordered Mitchell to be off of work completely for several weeks and to undergo physical therapy.  *Id*., pp. 7-8; Record at pp. 307-328.  Also in March of 2003, Mitchell had chest X-rays, which revealed no pulmonary disease, and underwent a "stress test," which yielded normal results.  Record at pp. 325-342 and 344.

On May 21, 2003, Mitchell saw Dr. Lane again and informed her "that she had been terminated from her job because she was not able to go back to work by [a specific] date." *Id*., p. 8.

Mitchell saw Dr. McArdle again in late May, 2003, and he determined that she needed "a further manipulation of her knee under general anesthesia in the near future." *Id*. He performed that procedure on May 30, 2003. *Id*.; Record at p. 214-215. A few weeks following that procedure, Dr. McArdle examined Mitchell again, "continued her on physical therapy, and . . . limited her to sit down work only." *Id*. Finally, "[o]n July 31, 2003, Dr. McArdle found that she was doing quite well," and thus he "stopped formal physical therapy . . . ." *Id*. On that same day, he released Mitchell with "no restrictions." Record at p. 205.

Nonetheless, Mitchell consulted with Dr. Mason on August 11, 2003, again complaining of pain and motion difficulties with her left knee. *Id*., p. 9. During that visit, Mitchell requested "a handicap parking sticker and a refill of her asthma medication." *Id*. She saw Dr. Lane in September of 2003, also complaining of a nagging cough. *Id*. Dr. Lane prescribed Pulmicort. *Id*. Mitchell saw a Dr. Girod in October 2003 and complained of chest pain. Dr. Girod sent her to the Parkview emergency room, where she was examined and diagnosed with "atypical chest pain, asthma, and hypertension." *Id*., p. 10; Record at pp. 479-480. On November 10, 2003, Dr. Cynthia Wellman performed a right thyroid lobectomy[.]" Plaintiff's Brief, p. 10.

From November of 2003 until mid-July of 2004, Mitchell saw various physicians for complaints about continuing knee pain and shortness breath. *Id*., pp. 10-13. None of the physicians Mitchell saw during this time period recommended any treatment other than physical therapy and continued use of medications to alleviate pain and other symptoms. *Id*. Record at

5

pp. 362, 365, 402-410, 438.  Also, in May and June of 2004, Mitchell underwent a pulmonary function test, an EKG, an echo Doppler, and a stress test.  The results from the EKG, echo Doppler, and stress test were normal, but the results of her pulmonary function study showed a mixed moderate obstructive and restrictive defect.  Record at pp. 444, 446, 454-456, 462.

Finally, Mitchell's medical records reveal that from February of 2003 until July of 2004, her weight increased from approximately 171 pounds to 183.5 pounds.  Record at pp. 179, 346, 348, 379.  It is not disputed that Mitchell is approximately five feet, five inches tall.  Importantly, as will be discussed later, Mitchell does not argue that any of the many physicians she saw during the relevant time period ever treated her for obesity related health problems or placed her on any restricted diets in order to reduce her weight.

## II.  Standard of Review

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or

substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

### III.  Applicable Law

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[3] *See* 20 C.F.R. § 404.1520; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled.

---

[3] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

*Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.*  The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## IV.  Discussion

In the present case, following the hearing and the presentation of evidence, the ALJ made the following findings:

> 1.  The claimant meets the nondisability insured status requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3.  The claimant's impairments are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).  Those impairments are bilateral degenerative joint disease of her knees, degenerative joint disease of her left shoulder, status-post left rotator cuff repair, a history of cervical degenerative disc disease, status-post cervical discectomy, hypertension, status-post total right lobectomy, status-post carpal tunnel release surgery, reactive airway disease and chest tightness, status-post left knee arthroplasty, chronic left knee pain, reactive airway disease, back pain and status-post hysterectomy.
>
> 4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 5.  The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6.  All of the medical opinions in the record regarding the severity of the claimant's impairments were considered in reaching this decision (20 CFR § 404.1527 and § 416.927).
>
> 7.  The claimant has the residual functional capacity to perform light work as defined in 20 CFR § 404.1567 and § 416.967 that involves no climbing of ladders, ropes or scaffolds, no concentrated exposure to fumes, odors, dusts,

gases, poor ventilation, no work around unprotected heights and that involves not even moderate exposure to extreme heat.

8. The claimant is able to perform her past relevant work as a line packer at a bakery as that job was performed by her in the past (20 CFR §§ 404.1565 and 416.965).

9. The claimant's medically determinable impairments of bilateral degenerative joint disease of her knees, degenerative joint disease of her left shoulder, status-post left rotator cuff repair, a history of cervical degenerative disc disease, status-post cervical discectomy, hypertension, status-post total right lobectomy, status-post carpal tunnel release surgery, reactive airway disease and chest tightness, status-post left knee arthroplasty, chronic left knee pain, reactive airway disease, back pain and status-post hysterectomy do not prevent the claimant from performing her past relevant work as a line packer.

10. The claimant is an individual closely approaching advanced age, 50-54 (20 CFR §§ 404.1563 and 416.963).

11. The claimant has "a high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

12. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

13. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

14. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.13 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include the light, unskilled occupations of small parts assembler, small production assembler and sub assembler.

15. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

Record at 26-27. The ALJ then concluded that "the claimant is not entitled to a period of disability or Disability Insurance Benefits under Sections 216(i) and 223, respectively, of the Social Security Act." *Id.* The ALJ also concluded that "the claimant does not satisfy the disability requirements for Supplemental Security Income payments under Sections 1602 and 1614(a)(3)(A) of the Social Security Act." *Id.*

Mitchell raises two challenges to the ALJ's determination. First, she argues that he "failed to properly evaluate her RFC." Plaintiff's Brief, p. 16. Second, Mitchell argues that the ALJ "improperly evaluated the credibility of her symptom testimony." *Id.*, p. 17. Expressed in other terms, Mitchell maintains that the ALJ, in forming his determination as to Mitchell's medical condition, failed to give proper weight to certain medical evidence regarding her alleged physical impairments, particularly the restrictions imposed by Dr. McArdle, and "failed to consider her obesity as required by the rulings in Seventh Circuit case law." *Id.*, p. 16. As to her own testimony, Mitchell claims that the ALJ "failed to evaluate all of the evidence on her daily living activities" before concluding that her testimony was not credible. *Id.*

In its response brief, the government contends that "substantial evidence supports the ALJ's RFC finding" that Mitchell is not entitled to benefits. Defendant's Memorandum in Support of Motion for Summary Judgment[4] ("Government's Response"), Docket at 19, p. 11. More specifically, the government argues that the ALJ "considered the entire record evidence" in arriving at his decision regarding Mitchell's impairments and explained his reasons for

---

[4] The government's response brief apparently was mistakenly titled a "Memorandum in Support of Motion for Summary Judgment." There is no such motion pending in this case and the government's brief was obviously intended only as a response to Mitchell's brief in support of her appeal of the ALJ's ruling. Accordingly, in this Order, the court will refer to the government's brief simply as "Government's Response."

10

attributing greater weight to certain medical opinions over others.  *Id*.  The government also argues that Mitchell's obesity was not an issue in this case and that "none of her doctors mentioned any concern over her weight."  *Id*.  Finally, as to Mitchell's contention that the ALJ made an erroneous credibility determination, the government counters by stating that: 1) the ALJ sufficiently explained that determination; and 2) Mitchell's "credibility" challenges are actually nothing more than a rephrasing of her arguments that the ALJ "failed to consider her impairments in combination."  *Id*., p. 12.

The ALJ's written decision in this case is lengthy (10 pages of single-spaced type) and detailed.  Record at pp. 18-27.  In addition to enumerating his findings as set forth above, the ALJ took care to explain how he arrived at those findings.  He discussed the evidence presented in the case, which included the medical records, the claimant's own testimony, and the testimony of Robert Bond, a vocational expert.[5]  The ALJ discussed and analyzed Mitchell's medical evidence in careful detail.  Record at pp. 19-24.  The ALJ clearly considered the medical evidence submitted or obtained from Drs. Lane, McArdle, Holton, and Wellman.  *Id*.  He also reviewed medical records obtained from Mitchell's physical therapists.  *Id*., p. 20.  He reviewed the results from the various tests that Mitchell underwent.  *Id*., p. 21.

In addition to thoroughly reviewing the medical evidence and the testimony of the vocational expert, the ALJ recounted much of Mitchell's own testimony in his written decision.

---

[5] Mitchell does not raise any objection or challenge to Bond's testimony.  Essentially, Bond testified that in his expert opinion, Mitchell was capable of performing her past relevant work as a line packer, notwithstanding her various health problems.  He also testified that he was able to identify many other types of jobs in the general economy that Mitchell could perform despite her somewhat limited educational level and her physical limitations or impairments.  Some of these jobs included small parts assembler, small products assembler, sub-assembler, and other "light duty" jobs.  Record at pp. 71-73, 75, 95-97.

Record at pp. 21-22.  The ALJ's summary of Mitchell's testimony reveals that she was able to explain in detail how her various alleged physical problems impacted her daily life and her ability to perform work.  *Id*.

After discussing all of the evidence he considered, the ALJ went on to discuss the standard of review he was obligated to employ when arriving at his decision in Mitchell's case.  In doing so, he wrote as follows:

> The undersigned must determine whether [Mitchell] retains the residual functional capacity to perform the requirements of her past relevant work or other work existing in significant numbers in the national economy.  The term "residual functional capacity" is defined in the Regulations as the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks[.]
> 
> . . .
> 
> In making this assessment, the undersigned must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of [the Federal Regulations].  The undersigned must also consider any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations . . . .

Record at p. 22 (internal citations omitted).[6]  Then, after correctly setting forth the standard of review mandated by federal regulations and Social Security Administration rulings, the ALJ set forth his analysis of applying the evidence in Mitchell's case to the applicable law in order to explain his findings and conclusions.  The ALJ explained that "[t]he medical evidence indicates that the claimant has . . . impairments that are 'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, either singly or in combination to one of the

---

[6] The ALJ also correctly restated and summarized the five-step evaluation process mandated in Social Security disability cases by 20 C.F.R. §§ 404.1520 and 416.920.  Record at p. 19.

impairments listed in Appendix I, Subpart P, Regulation No. 4.  After a review of the entire record, the undersigned is in agreement with the prior determinations of the non-examining physicians of the State Agency that no listing is met or equaled (Social Security Ruling 96-6p)."  Record at p. 22.

The ALJ further concluded that "[t]he claimant's allegations that she can perform no substantial work activity [because of her various alleged physical problems] are not fully credible.  These allegations are inconsistent with the objective medical evidence and the claimant's treatment history.  The claimant's documented impairments undoubtedly produce symptoms of the general type described, but they are not as limiting as claimed by the claimant."  *Id*., p. 23.  The ALJ then concluded that "the claimant retains the residual functional capacity to perform light work . . . [with certain limitations]."  *Id*., p. 24.  The ALJ then went on to present a detailed discussion of the Social Security medical-vocational guidelines, the testimony of the vocational expert, and applied those guidelines and evidence to Mitchell's particular case.  He then concluded that Mitchell "is capable of making a successful adjustment to work that exists in significant numbers in the national economy."  *Id*., p. 25.

In light of the ALJ's thoughtful and thorough discussion of the applicable law and the evidence presented, Mitchell's arguments that he failed to consider all of the relevant evidence in a proper manner, or that he failed to consider all of Mitchell's alleged impairments in combination, are not persuasive.  It is clear from the record that Mitchell suffers from physical pain and problems.  Even the government concedes that her case is "sympathetic."  Government's Response, p. 11.  However, the government is also correct when it states that the ALJ adequately reviewed the relevant evidence and explained in his written decision how he

assessed that evidence when arriving at his ultimate conclusion that Mitchell was not disabled. *Id*.  The government also argues that the ALJ did not fail to consider all of Mitchell's problems and impairments in combination, as she asserts.  *Id*., p. 12.  The government points out, just as this court explained above, that the ALJ considered all of Mitchell's medical evidence in much detail, including her knee and shoulder problems, her breathing and asthma problems, and her pain levels.  *Id*., pp. 12-13.  The ALJ did not state that Mitchell was not suffering from physical problems, nor did he minimize those problems in any way.  Rather, he concluded that her impairments did not render her disabled according to applicable Social Security law.

As to Mitchell's argument that the ALJ failed to take into account Dr. McArdle's limitation in February 2003 (seven weeks after she underwent her shoulder acromioplasty) concerning "no use" of her left arm and his limitation stated in June 2003 (three months after she underwent a total knee arthroplasty and one month after she underwent manipulation of her left knee) to "sit-down work," Plaintiff's Brief, p. 15-16; Record at pp 208, 235, Mitchell seemingly ignores the fact that when Dr. McArdle assigned these restrictions, he did not check the box available on the restriction worksheet to indicate that the work restrictions were permanent, thereby indicating that they were temporary in nature.  *See Stevenson v. Chater*, 105 F.3d 1151, 1155 (7th Cir. 1997) ("The ALJ was entitled to make reasonable inferences from the evidence before him . . . ."). Even more significantly, however, on July 31, 2003, Dr. McArdle terminated Mitchell's physical therapy program and released Mitchell with "no restrictions."  Record at p. 205; *see generally* 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears

14

the burden of supplying adequate records and evidence to prove their claim of disability.")

As a result, the ALJ's omission from his opinion of Dr. McArdle's temporary, post-surgical restrictions does not merit a remand of the ALJ's decision, as these ostensibly temporary restrictions fall short of constituting "important" evidence, since Dr. McArdle later released her with "no restrictions." In that vein, "[w]e have never embraced the more extensive proposition . . . that the ALJ must mention and assess in writing *every* piece of evidence." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985) (emphasis added) ("If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough."). "A more extensive requirement sacrifices on the altar of perfectionism the claims of other people stuck in the queue." *Id.*; *see also Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (stating that when reviewing an ALJ's decision, a court will "give the opinion a commonsensical reading rather than nitpicking at it" (citations omitted)).

As to Mitchell's argument that the ALJ failed to take into account her obesity, the government argues that this argument is "without merit" since "no treating, examining, or reviewing physician opined that Ms. Mitchell was obese and none of them even suggested that she needed to lose weight or that her weight compounded any of her impairments." Government's Response, p. 13. The government's argument is well taken. It is true, as Mitchell maintains, that there is case law stating that obesity is a condition that can be considered in the context of Social Security disability determinations. *See* Plaintiff's Brief, p. 16. But it requires a leap of faith for Mitchell to argue that the ALJ's decision should be reversed or remanded because he failed to place greater evidentiary weight on a physical condition that none of her

15

doctors apparently considered serious.

In fact, Mitchell, who was represented by counsel at the hearing, *see Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987) (articulating that when a claimant is represented by counsel an ALJ "is entitled to assume that the applicant is making his strongest case for benefits"), never alleged obesity as a basis for disability and, more importantly, has not pointed to any medical source of record who opined that Mitchell had a weight problem, referred to her as obese, or stated that she should lose weight.  *Cf. Clifford*, 227 F.3d at 873 (stating that the ALJ should have considered the claimant's obesity even though she did not allege it as a basis of disability where there were numerous references in the record to the claimant's "excessive" weight problem, including a statement from a medical professional that she was "obese," a suggestion by another medical professional that she lose weight, and that her physician prescribed a diet).

As the government points out, the law supports the proposition that when no doctor included a particular alleged impairment or physical problem in any diagnosis or clinical finding, the lack of such a diagnosis or finding could be significant in making a disability determination. *See, e.g., Anderson v. Bowen*, 868 F.2d 921, 925 (7th Cir. 1989) (finding it significant that none of the doctor's notes included the claimant's alleged impairment as part of a diagnosis or a clinical finding).  In the present case, the ALJ acknowledged Mitchell's argument concerning her obesity; in fact, the ALJ specifically included in his recitation of Mitchell's testimony her statement that her weight was "50 to 55 pounds more than normal due to her thyroid problems." Record at p. 21.  However, the ALJ determined that there was no medical evidence indicating that it had any impact on the physical impairments that she claimed prevented her from

16

performing any work, given that the objective medical evidence was devoid of any reference to obesity as a cause or even a substantial factor in Mitchell's physical condition. *See Johnson v. Barnhart*, 449 F.3d 804, 807 (7th Cir. 2006) ("[T]here is no indication that in assessing [the claimant's] joint problems the administrative law judge gave insufficient weight to the effect on them of [the claimant's] obesity, which is anyway not extreme.").

Finally, there is Mitchell's argument that the ALJ erred in concluding that her own testimony was "not totally credible." Record at p. 26. Mitchell maintains that "although the ALJ states that she exaggerates to some degree her limitations . . . he failed to consider how the combination of her obesity, bad left knee, and pulmonary problems might combine to explain what the ALJ considers a gap between the medical evidence and her testimony." Plaintiff's Brief, p. 17. The government argues in response that this argument is simply a way of restating or rephrasing Mitchell's argument that the ALJ failed to consider all of her impairments in combination. Government's Response, p. 15. This argument is well taken, as Mitchell is simply rehashing her argument concerning the ALJ's alleged failure to consider her purported obesity. As concluded *supra*, there is no indication that the ALJ failed to consider Mitchell's various impairments in combination.

Next, as part of her credibility argument, Mitchell also revisits her assertion concerning the ALJ's failure to expressly consider Dr. McArdle's temporary restrictions. As concluded *supra*, these temporary restrictions do not constitute important evidence sufficient to justify a remand since Dr. McArdle subsequently released Mitchell with "no restrictions."

Finally, Mitchell argues that during his credibility analysis the ALJ improperly equated her daily activities to an ability to return to the workforce. Contrary to Mitchell's argument, the

17

ALJ did not place undue emphasis on Mitchell's daily living activities in his analysis; rather, he properly considered Mitchell's activities as one factor in assessing the credibility of her testimony and the RFC ultimately assigned to Mitchell.  20 C.F.R. § 404.1529(c)(3); *compare Schmidt*, 395 F.3d at 746-47 (considering claimant's performance of daily activities as a factor when discounting claimant's credibility), *and Scheck*, 357 F.3d at 703, *with Mendez v. Barnhart*, 439 F.3d 360, 362-63 (7th Cir. 2006) (cautioning ALJs "against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home"), *and Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005).

Moreover, in addition to considering her daily activities, the ALJ discounted Mitchell's credibility because he found her allegations inconsistent with the objective medical evidence and her treatment history, supporting his conclusion with specific examples from the record.  *See* Record at p. 23.  Thus, the ALJ's credibility analysis is supported by ample evidence.

As the government states, "no one, including the ALJ, was saying that Ms. Mitchell was pain-free or symptom-free.  The ALJ's point was, even with Ms. Mitchell's impairments, she was not as disabled as she alleged."  Government's Response, p. 16.  Credibility determinations are to be made by the ALJ, not by the reviewing court.  *Id*. (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)) ("[A]n ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, this court will not overturn an ALJ's credibility determination unless it is patently wrong.").   In this case, the ALJ clearly determined that Mitchell's testimony regarding her physical impairments and her alleged inability to perform any work was not completely truthful.  And this credibility determination was supported by the medical evidence, which as the ALJ also pointed out, was inconsistent with Mitchell's testimony.  For these

18

reasons, this court will not second guess the ALJ's conclusion on this issue.

As explained at the outset of this Order, this court's review of an ALJ's determination in a Social Security case is highly deferential.  "An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion."  *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984).  In the present case, the court finds that there is substantial evidence to support the ALJ's findings and conclusions.

## V. Conclusion

For the foregoing reasons, the final decision of the Commissioner is hereby AFFIRMED.  The Clerk is directed to enter a judgment in favor of the Commissioner and against Mitchell.

Entered: July 18, 2007.

/s/   Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge